# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| PATRICIA COURTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-00944 |
| | ) | Judge Trauger/Brown |
| CORRECT CARE SOLUTIONS, | ) | Jury Demand |
| LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**To: The Honorable Aleta A. Trauger, United States District Judge.**

## REPORT AND RECOMMENDATION

The undersigned **RECOMMENDS** for the reasons stated below that: 1) Correct Care Solutions' (CCS) motion to dismiss (Doc. 18) be **DENIED IN PART AND GRANTED IN PART**; 2) CCS's motion to dismiss **BE DENIED WITH RESPECT TO PLAINTIFF'S CLAIMS OF RETALIATION** for reporting a co-worker's offensive statements, discussed below at ¶ II.C.2(b)[1] at p. 17; 3) CCS's motion to dismiss **BE GRANTED WITH RESPECT TO THE REMAINDER OF PLAINTIFF'S CLAIMS** for the reasons explained herein; and 4) CCS's motion to ascertain the status of its motion to dismiss (Doc. 26) be **TERMINATED AS MOOT**.

## I. BACKGROUND

Plaintiff, proceeding *pro se* and *in forma pauperis*, brought this action on June 15, 2017 alleging violations of the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 621, *et seq*., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.. (Doc. 1) Plaintiff named CCS as a defendant as well as, Jorge Dominicis, Jerry Boyle and Kevin Jordan (Jordan), CEO, Chairman of the Board and Senior Vice President of CCS respectively. Plaintiff attached to her complaint a copy of the Charge of Discrimination (the Charge) that she filed with the Equal Employment Opportunity Commission (EEOC) on May 18, 2017 and the Dismissal and Notice of

Rights (right to sue letter) that the EEOC issued on May 24, 2017. (Doc. 1, pp. 6-7 of 31)[1] The

Charge alleged discrimination based on race, retaliation, and age. (Doc. 1, p. 6 of 31)

The complaint was dismissed as to Dominicis, Boyle and Jordan on June 26, 2017 pursuant

to initial review under 28 U.S.C. § 1915(e)(2) leaving CCS as the sole defendant. (Doc. 4, p. 2)

This action was referred to the undersigned concurrently to "enter a scheduling order for the

management of the case, to dispose of or recommend disposition of any pretrial motions under 28

U.S.C. §§ 636(b)1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b),

Fed.R.Civ.P., and the Local Rules of Court." (Doc. 4, p. 2)

On July 28, 2017, CCS filed a motion to dismiss for failure to state a claim or, in the

alternative, for a more definitive statement. (Docs. 7-8) Plaintiff filed a response on August 1, 2017

(Doc. 9), following which CCS replied on August 7, 2017 (Doc. 12). The undersigned held a

telephone conference with the parties on October 5, 2017. (Doc. 15) The undersigned wrote the

following in his October 12, 2017 order pertaining to that telephone conference:

> [T]he Magistrate Judge will allow the Plaintiff **21 days** from entry of
> this order to file an amended complaint if she chooses to do so. In
> the event the Plaintiff does file an amended complaint, the Magistrate
> Judge will terminate the present motion to dismiss or to file a more
> definite statement (Docket Entry 7) as moot, without prejudice to
> being refiled in response to the amended complaint. . . .

(Doc. 16, p. 1)(bold in the original)

Plaintiff filed a motion to amend her complaint on October 20, 2017, attaching a copy of the

proposed amended complaint to her motion. (Doc. 17) Thereafter, CCS filed a motion to dismiss

on November 3, 2017 (Docs. 18-19), to which plaintiff responded on November 8, 2017 (Doc. 20),

---

[1] The page numbers cited herein are to those provided by the parties where the they have complied with
LR7.03(a), Local Rules of Court. The page number generated by the court's CMECF system is referred to in those
instances where the parties did not comply with LR7.03(a).

and CCS replied on November 13, 2017 (Doc. 23).  In the interim, the undersigned entered an order on November 9, 2017 in which he granted plaintiff's motion to amend, instructed the Clerk to file the proposed amended complaint attached to plaintiff's October 20th motion to amend, and terminated CCS's July 28th motion to dismiss as moot.  (Doc. 21, p. 1) CCS's November 3, 2017 motion to dismiss (Doc. 18) is now properly before the court.

## II.  ANALYSIS

### A.  Standard of Review

In assessing a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal quotation marks and citation omitted).  A complaint must provide "more than labels and conclusions . . . a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly* , 550 U.S. 544, 555 (2007).  The courts are not required to accept as true legal conclusions couched as factual allegations.  *Bell Atl. Corp.*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Bell Atl. Corp.*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2))(internal citation omitted).

### B.  Exhaustion of Administrative Remedies

CCS argues initially that this action should be dismissed because plaintiff failed to exhaust her administrative remedies in the EEOC.  (Doc. 19, ¶ II, pp. 2-7)  CCS asserts two specific

arguments to that end: 1) plaintiff provided no factual allegations pertaining to age discrimination in the Charge; 2) plaintiff does not allege in the Charge that she was passed over for a promotion. (Doc. 19, ¶ II.A-B, pp. 3-7)

Exhaustion of administrative remedies is a condition precedent to Title VII and ADEA claims. *See Zipes v. TWA*, 455 U.S. 385, 392-98 (1982); *Hill v. Nicholson*, 383 Fed.Appx. 503, 508 (6th Cir. 2010). Even though the requirement is not jurisdictional, the Sixth Circuit requires that adjudication of cases alleging discrimination be "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *EEOC v. R.G. & F.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 597 (6th Cir. 2018)(citations omitted).

Turning to CCS's first argument, plaintiff checked the box in the Charge corresponding to "Age." Plaintiff also asserted the following in the "PARTICULARS" section of the Charge: "I am . . . in the protected age group," and "I have been discriminated against . . . in violation of the Age Discrimination in Employment Act of 1967 . . . ." (Doc. 22, p. 16 of 17) The right to sue letter shows that the EEOC considered **"the Age Discrimination in Employment Act"** in dismissing her complaint. (Doc. 22, p. 15 of 17)(bold in the original) Based on the foregoing, the undersigned concludes that plaintiff exhausted her ADEA claim in the EEOC or, at the very least, an ADEA claim could reasonably be expected to grow out of the Charge. Consequently, CCS's motion to dismiss plaintiff's ADEA claim for failure to exhaust should be denied.

As for CCS's second argument, *i.e.*, failure to promote, plaintiff checked the box in the Charge corresponding to "Retaliation." (Doc. 22, p. 16 of 17) Plaintiff also asserted in the "PARTICULARS" section of the Charge that she is an "African American," that she complained about harassment, that her job duties were changed, that she received an evaluation that stated her "production was down," and that she "was discharged for walking out of [a] meeting" to discuss a

"poor relationship" with a co-worker.  (Doc. 22, p. 16 of 17)  The right to sue letter shows that the EEOC considered "**Title VII**" in dismissing her complaint.  (Doc. 22, p. 15 of 17)

A plain reading of the Charge reveals that plaintiff made no reference any failure-to promote claim.  (Doc. 22, ¶ 36, p. 9)  The question becomes, would plaintiff's failure-to-promote claim reasonably be expected grow out of the Charge?

The Sixth Circuit has held that, "'where the facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'"  *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004)(quoting *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002)).  Plaintiff's failure-to-promote claim would not reasonably be expected to grow from the facts alleged in the Charge, because there is nothing in the Charge that would have led the EEOC in that direction during its investigation.  For these reasons, plaintiff's failure-to-promote claim is not properly before the court.  Consequently, CCS's motion to dismiss plaintiff's failure-to-promote claim for failure to exhaust should be granted.

The undersigned pauses here to address an additional exhaustion issue that arises from what appear to be vague gender or sex claims in the amended complaint (Doc. 22, ¶¶ 27,  34, pp. 5, 8), addressed below at ¶ II.C.2(a)[1], pp. 12-13.  Plaintiff describes the protected class to which she belongs as follows in the amended complaint: "Plaintiff is in a protected class (Black, **female**, age 48 and a month away from age 49 at [the] time of termination) based on race, age, **gender**, and so on, as determined by the Equal Opportunity Commission (EEOC)."  (Doc. 22, ¶ 8, p. 2)(bold added)  The words "female" and "gender" in bold support the notion that plaintiff is asserting gender or sex claims.

A plain reading of the Charge shows that plaintiff did not check the box in the Charge

labeled "SEX" to signal she was raising a gender or sex discrimination claim. (Doc. 22, p. 16 of 17) Moreover, the "PARTICULARS" section of the Charge is silent as to gender and sex. Plaintiff asserts only that "I believe . . . I have been discriminated against because of my **race** (African American) . . . and my **age** . . . ." (Doc. 22, p. 16 of 17)(bold added) There also is nothing in the right to sue letter that suggests the EEOC considered gender or sex in reviewing her complaint. (Doc. 22, p. 15 of 17) Finally, there is nothing in the Charge or right to sue letter that would lead one to believe that a gender or sex claim likely would grow from the facts alleged in the Charge. In short, to the extent plaintiff is asserting gender and sex claims in her amended complaint, those claims should be dismissed because plaintiff did not exhaust them in the EEOC prior to raising them in this action. 28 U.S.C. § 1915(e)(2)(B)(ii).

### C. CCS's ARGUMENTS ON THE MERITS

The undersigned turns next to the merits of CCS's arguments, with respect to which CCS wrote the following in a footnote:

> . . . . Plaintiff's claims under the ADEA should be dismissed for failure to exhaust her administrative remedies. In the event the Court believes Plaintiff has satisfied her administrative burden, and because the analysis is similar to that under Title VII, **CCS will address Plaintiff's** deficient **claims of discrimination and retaliation under both Title VII and ADEA together**.

(Doc. 19, p. 9 n. 4)(bold added) Notwithstanding CCS's approach, the undersigned will address plaintiff's ADEA and Title VII claims separately for clarity of analysis.

### 1. Plaintiff's ADEA Claim

Plaintiff alleges that CCS discriminated against her because of her age. (Doc. 22, ¶ IV, pp. 12-13) The crux of CCS's argument in its motion to dismiss is that plaintiff has failed to state a plausible claim of age discrimination. (Doc. 19, ¶ III.A, pp. 9-11)

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise

discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). A plaintiff bringing an ADEA claim "must prove that age was a determining factor in the adverse action that the employer took against . . . her." *Joanne Alberty v. Columbus Township*, ___ Fed.Appx. ___, 2018 WL 2022585 * 3 (6th Cir. 2018)(quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993)). The Supreme Court has held that the ADEA does not permit "a mixed-motives" claim; a plaintiff alleging a violation of the ADEA must prove by a preponderance of the evidence that "age was 'the but-for' cause of the employer's adverse action." *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 423, 429 (6th Cir. 2014)(quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).

To establish a *prima facie* case of age discrimination, plaintiff must show that she was: 1) at least 40 years old at the time of the alleged discrimination; 2) subjected to an adverse employment action because of her age; 3) otherwise qualified for the position; 4) replaced by someone outside the protected class, or she was treated differently than similarly situated individuals. *See Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'Ship*, 508 Fed.Appx. 404, 410-11 (6th Cir. 2012); *Harris v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010).

Following are the references pertaining to plaintiff's age or the ADEA appearing in the amended complaint:

> Plaintiff noted in her complaint that "[t]his Court has jurisdiction of the lawsuit . . . in that it arises under . . . the Age Discrimination in Employment Act ('ADEA')."

(Doc. 22, ¶ II.4, p. 2)

> Plaintiff wrote next that she "is in a protected class . . . age 48 and a month away from age 49 at [the] time of termination . . . based on . . . age . . . ."

(Doc. 22, ¶ III.8, p. 2)

Plaintiff asserts in her first cause of action that she "establishes a prima facie case . . . [as] . . . a member of a protected class . . . ."

(Doc. 22, ¶ IV.44, p. 12)

Plaintiff asserts in her second cause of action that, "[a]s a direct and proximate result of Defendant's violation of the . . . Age Discrimination in Employment Act . . . [she] . . . has suffered, and continues to suffer, loss of equitable income as well as other employment benefits."

(Doc. 22, ¶ IV.50, p. 13)  The statements above provide no *factual* allegations, nor can any be liberally construed from them.

Because plaintiff is proceeding *pro se*, the undersigned looked to her response to CCS's motion to dismiss in an effort to see if she alleged any factual allegations there that might support her ADEA claim.  There are none.  Apart from some non-substantive comments at the beginning of her response, plaintiff's only references to age or the ADEA in her response are the same as the four excerpts quoted above from the amended complaint.[2]  (Doc. 20, ¶ II.4, p. 4 of 20; ¶ III.8, p. 5 of 20;

---

[2]  The undersigned notes that plaintiff also appears to raise the following additional claims in her response to CCS's motion to dismiss not addressed elsewhere herein:

Defendant racially discriminated against the Plaintiff by denying her a promotion and younger white males were promoted within the company for open positions or transferred around to other departments; by denying her an opportunity to meet production merits while white and non-black male employees performing work with the FBOP . . . were given more contract negotiations and ability to meet productivity metrics; and by paying her less money than similarly situated white male employees even though she was performing substantially the same work and such racial discrimination was pervasive, continuing, invidious, and ongoing.

(Doc. 20, p. 3)  To the extent that the foregoing constitute an effort on plaintiff's part to raise new claims for relief in her response, the court may not consider them for the following reasons.  First, the district court is limited in its review to "legal claims . . . raised in the pleadings" as defined by Rule 7(a), Fed.R.Civ.P.  *See Johnson v. Metro. Govt. of Nashville and Davidson County, Tenn.*, 502 Fed.Appx. 523, 541-42 (6th Cir. 2012).  Plaintiff's response to the motion to dismiss does not constitute a pleading under the Federal Rules of Civil Procedure.  *See* Rule 7(a), Fed.R.Civ.P.  Second, there is nothing in the Charge that pertains to these new apparent claims, nor would it be reasonable to expect these claims to grow out of the Charge.  Finally, even if facts alleged in the Charge were liberally construed to include these claims, or liberally construed that it would be reasonable for them to grow out of the Charge, plaintiff raises them more than two months after the 90-day deadline to raise her claims in an action in district court.  For these reasons, the undersigned will not address these apparent new claims.

Finally, the undersigned reviewed plaintiff's original complaint to see if she provided any factual allegations in it.  Apart from citing "the Age Discrimination Act of 1967" as grounds for filing her case (Doc. 1, ¶ 1, p. 1 of 31), the "Statement of claim" section of the original complaint is silent as to age or the ADEA (Doc. 1, ¶ 4, pp. 2-4 of 31).  The attached emails also make no reference to age.  (Doc. 1, pp. 8-31 of 31)

Although *pro se* complaints are held to less stringent standards than complaints prepared by an attorney, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), the courts are not willing to "abrogate basic pleading essentials in *pro se* suits," *see Clark v. Johnston*, 413 Fed.Appx. 804, 817 (6th Cir. 2011)(quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990)).  "[M]ore than bare assertions of legal conclusions or personal opinions are required to satisfy federal notice pleading requirements."  *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008)(citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).  A "complaint must . . . 'contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'"  *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012)(quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir.2007)).  Moreover, the less stringent standard for *pro se* plaintiffs also do not "require [a] court to conjure up unpled allegations."  *Porter v. Genovese*, 676 Fed.Appx. 428, 440 (6th Cir. 2017)(citing *Wells*, 891 F.2d at 594).  Simply put, conclusory claims are subject to dismissal.  *See Ashcroft*, 556 U.S. at 678; *Bell Atlantic Corp.*, 550 U.S. at 555; *Erie County, Ohio v. Morton Salt, Inc.* 702 F.3d 860, 867 (6th Cir. 2012).

As shown above, plaintiff has failed to provide any factual allegations in support of her ADEA claim.  Nor, as noted above at p. 7, may plaintiff piggyback an ADEA claim on her Title VII

claims.  Accordingly, CCS's motion to dismiss plaintiff's ADEA claim should be granted for failure to state a claim.

## 2.  Plaintiff's Title VII Claims

Title VII prohibits an employer from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1), (m); *see University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 342, 347 (2013).  Title VII also prohibits retaliation based on an employee's opposition to any employment practice made unlawful under Title VII, or because she has made a charge, testified, or participated in an investigation, proceeding or hearing pertaining to claims of employment discrimination.  42 U.S.C. § 2000e-3(a); *see University of Texas Southwestern Medical Center*, 570 U.S. at 347-48, 360.

A plaintiff may rely on direct or circumstantial evidence to establish a Title VII claim.  *See e.g., Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012).  Where, as here, a plaintiff does not base her claim on direct evidence, her circumstantial evidence is analyzed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) burden-shifting framework, later modified by *Texas Department of Community Affairs v. Burline*, 450 U.S. 248, 252-53 (1981).  *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).  Under that framework: 1) the plaintiff must first establish a *prima facie* case of discrimination; 2) the burden then shifts to the defendant to offer a legitimate, non-discriminatory basis for its actions; 3) if the defendant does, then the burden shifts back to the plaintiff to establish that the employer's proffered reasons are a mere pretext.  *Texas Department of Community Affairs*, 450 U.S. at 253.

### (a) Plaintiff's Hostile Work Environment Claims

Plaintiff asserts that she was subject to a hostile work environment for the reasons

enumerated [1] through [4] below. CCS argues that plaintiff's hostile-work-environment claim should be dismissed because plaintiff fails to state a plausible claim of discrimination. (Doc. 19, ¶ III.A, pp. 9-11)

To state a *prima facie* case of a hostile work environment under Title VII, a plaintiff must show that: 1) she is a member of a protected class (African-American in this case); 2) she was subjected to unwelcome harassment; 3) the harassment was based on plaintiff's protected status; 4) the harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of employment; 5) the employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions. *Fullen v. City of Columbus*, 514 Fed.Appx. 601, 606-07 (6th Cir. 2013)(citing *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008)).

### [1] Duncan Gibson's Alleged Offensive Statements

The amended complaint alleges that, "[a]round the month of Jule 2016" plaintiff heard Duncan Gibson (Duncan) – with whom plaintiff worked as a contracts specialist on Federal Bureau of Prison (FBOP) contracts – say the following: "'Yes, my dad was born and bred in Alabama and I'm a real redneck!' 'Yes, you know how we do.'" (Doc. 22, ¶¶ 17-18, 24, pp. 3-4) Duncan was in an adjacent cubicle "on the phone . . . talking about contract negotiations." (Doc. 22, ¶ 24, p. 4) Plaintiff considered Duncan's comments "offensive and threatening racial slurs," "racist, classist, and prejudiced." (Doc. 22, ¶ 24, p. 4)

Plaintiff asserts further that "[a]round the month of June 2016 for about three days in a row" she "heard Duncan on the phone at different times using the racial slur 'Yes, a real redneck, that's right'; 'I live in Brentwood, TN.'" (Doc. 22, ¶ 25, p. 4) Plaintiff asserts that, when she no "longer heard Duncan on the phone," she asked him "over the cubicle if he thought he had special privileges because [wa]s a 'redneck,'" informing him that his comments were "racially offensive and scary."

11

(Doc. 22, ¶ 25, p. 4)  Plaintiff asserts that Duncan "looked at [her] but never answered."  (Doc. 22, ¶ 25, p. 4)   According to plaintiff, Duncan's comments "create[ed] a work environment that a reasonable person would consider intimidating and hostile."  (Doc. 22, ¶ 25, p.5)

Plaintiff alleges that Duncan "later" remarked in a separate incident that it was "stupid to have a female for president, especially Hillary Clinton," which plaintiff interpreted as sexist.  (Doc. 22, ¶ 27, p. 5)  On a date unspecified, plaintiff alleges that she spoke with Tracy Blair (Tracy) – under whose supervision she and Duncan worked at the time – to complain about Duncan's "redneck" remarks who, in turn, assured plaintiff that he "would speak with Duncan and ask him to 'tone it down.'"  (Doc. 22, ¶¶ 9, 17, 28, pp. 2-3, 5)  Plaintiff also alleges that she reported "a perceived racially offensive remark from Duncan . . . mocking Hispanics [because] they took off a day from work," and a remark he made about "men now being able to shop at the Brentwood Kroger since they now have a bar."  (Doc. 22, ¶ 34, p. 8)

In assessing a hostile workplace claim, the court must "look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)(citation omitted).  The hostility must be pervasive; "'simple teasing. . . offhand comments, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(citation omitted).  The "mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993); *see also Williams v. CSX Transp. Co.*, 643 F.3d 502, 513 (6th Cir. 2011); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707-08 (6th Cir. 2007).

Duncan's alleged "redneck" comments do not give rise to a Title VII violation because they were not physically threatening and, although they engendered offensive feelings, they were mere utterances. Further, Duncan's "redneck" remarks were not directed at plaintiff; he directed them at himself and the person to whom he was speaking. Duncan also was not in the same cubicle as plaintiff, nor can it be liberally construed from the amended complaint that he was aware that plaintiff was listening to his end of phone conversations until after she confronted him. Plaintiff also does not allege that the "redneck" comments continued after she confronted him and reported Duncan to Tracy. Consequently, the amended complaint fails to allege and show that the problem was not corrected. Finally, Duncan's one-time remarks about "a female for president," Hispanics taking a day off, and men being able to shop in the Brentwood Kroger because "they now have a bar" are nothing more than offhanded, isolated incidents. As such, they do not give rise to a Title VII hostile-work-environment claim.[3] CCS's motion to dismiss should be granted here because plaintiff fails to make a *prima facie* showing of a Title VII hostile-work-environment claim.

### [2] Upper Management's Alleged Harassment of Plaintiff For Reporting Duncan's Statements

Plaintiff asserts that, "during the end of June and beginning of July 2016," management at CCS harassed her for engaging in the protective activity of reporting Duncan's offending statements. (Doc. 22, ¶ 29, pp. 5-6) Plaintiff alleges that her work duties were increased "significantly" by requiring her to "take[] on duties also expected of Duncan . . . and Tracy often causing interference with Plaintiff's regular contracts specialist work metrics." (Doc. 22, ¶ 29, p. 6) Plaintiff alleges further that "[n]o other contracts specialist . . . was required to help complement management duties for Duncan and Tracy," although there "were other managers (all White) that should and could have

---

[3] The Magistrate Judge notes that, even if plaintiff had exhausted a gender or sex claim in the EEOC, that claim still would still be subject to dismissal for the reasons set forth in this paragraph.

13

been directed to assist," and that she was not offered a "promotion, salary increase or change in title" for doing the additional work. (Doc. 22, ¶ 31, pp. 6-7) Plaintiff asserts that she discussed her "significantly increased workload" with Tracy in July 2016, but that Tracy and she were informed by Kenya Adams (Kenya) – under whom Tracy worked at the time – in September 2016 that "upper management would not approve a promotion . . . salary increase or change in title . . . ." (Doc. 22, ¶ 31, pp. 6-7) Subsequently, "[d]uring or around December," plaintiff's FBOP work with Duncan "was significantly decreased . . . and Paolo Viteri (non-black younger male) was assigned to become the FBOP working with . . . Duncan . . . instead of Plaintiff . . . ." (Doc. 22, ¶ 32, p. 7)

Plaintiff does not assert, nor can it be liberally construed from the amended complaint, that the harassment alleged was based on plaintiff's protected status as an African-American. Rather, the amended complaint is unambiguous that upper management's alleged actions were based on plaintiff having reported Duncan's offensive statements. Because the amended complaint fails to make a *prima facie* showing a hostile work environment under Title VII, CCS's motion to dismiss should be granted with respect to this claim.

### [3] Pamela Cane's and Duncan's Alleged Loud Conversations, Laughter, and Coughing

Plaintiff alleges that Pamela Cane (Pamela) – also a contracts specialist under Tracy's supervision – and Duncan subjected her to a hostile work environment due to "loud conversations and laughter near Plaintiff's cubicle," and by coming to work "severely coughing in spite of an email from the CEO to stay home when sick," plaintiff asserting that she eventually became ill herself. (Doc. 22, ¶¶ 33, 39, pp. 8, 10) Plaintiff asserts that she told Kenya and Jordan about the alleged harassment and having to work from home or in common areas due to the disturbances. (Doc. 22, ¶ 33, p. 8) Plaintiff asserts further that she spoke with Kenya on May 12, 2017 about having to leave the office work from home due to "noise disturbances and severe coughing next to [her] cubicle

going on . . . for almost four months." (Doc. 22, ¶ 39, p. 10) Finally, plaintiff alleges that Pamela and Duncan "were indifferent to [her], even joking about moving [her] to an isolated area from the rest of the team . . . [and Pamela] . . . bec[oming] louder on personal cell phone calls . . . ," and that "Kenya and Kevin did not prevent or promptly correct their. . . behavior." (Doc. 22, ¶ 34, p. 8)

Taking Pamela's and Duncan's alleged conduct as true, plaintiff does not allege, nor can it be liberally construed from the amended complaint that Pamela's and Duncan's actions were based on plaintiff's protected status as an African-American. Accordingly, CCS's motion to dismiss this claim should be granted because plaintiff fails to make *a prima facie* showing of a Title VII hostile work environment under the facts alleged.

### [4] Pamela's Alleged Hostility Toward Sarah Bailey

The amended complaint alleges that Sarah Bailey (Sarah) – Tracy's successor – spoke to plaintiff in January 2017 about "being verbally attacked by . . . Pamela . . . and spoke about how Pamela was combative with her in the presence of co-workers and subordinates . . . ." (Doc. 22, ¶¶ 20, 37, pp. 3, 9) The amended complaint asserts without elaboration that plaintiff responded: "'If Pamela treat[s] you like this and you are a director, imagine what she puts me through . . . ." (Doc. 22, ¶ 37, p. 9) Thereafter, in April 2017, plaintiff alleges that Sarah "began to ask Plaintiff to 'correct' work mistakes made by Pamela . . . because [Sarah] . . . did not want to deal with her." (Doc. 22, ¶ 38, p. 9) Plaintiff avers that she began to correct Pamela's "mistakes immediately but also informed Kenya . . . and . . . Jordan about the hostile environment . . . ." (Doc. 22, ¶ 38 p. 9)

Taking the foregoing as true, the circumstances described here are of Pamela allegedly harassing Sarah, not Pamela harassing plaintiff, or Sarah harassing plaintiff. Even if it were determined that Pamela's harassment of Sarah is imputed to CCS through Sarah when Sarah asked plaintiff to correct Pamela's mistakes, Sarah did not "ask" plaintiff to correct Pamela's mistakes

because of plaintiff's protected status as an African-American. Sarah asked plaintiff to correct the mistakes because she "did not want to deal with" Pamela. CSS's motion to dismiss should be granted here because plaintiff fails to make a *prima facie* showing of a Title VII hostile-work-environment claim under the facts alleged.

### (b) Plaintiff's Retaliation Claims

A *prima facie* case of Title VII retaliation requires proof that: 1) plaintiff engaged in activity protected by Title VII; 2) the defendant knew of plaintiff's exercise of activity protected by Title VII; 3) the defendant took an action that was "materially adverse" to plaintiff; 4) a causal connection existed between the protected activity and the materially adverse action. *Mys v. Michigan Dep't of State Police*, 886 F.3d 591, 599-600 (2018)(citation omitted). "Materially adverse" in the context of the second element means the action "might well have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Laster v. City of Kalamazoo*, 746 F.3d 714, 730-31 (6th Cir. 2014). The fourth element "requires proof of so-called 'but-for' causation, meaning that the plaintiff must furnish evidence that the 'unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Mys*, 886 F.3d at 600 (citation omitted).

The law is well established that "[a] mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action." *Deleon v. Kalamazoo City. Rd. Comm's*, 739 F.3d 914, 918 (6th Cir. 2014)(quoting *White v. Burlington N. & Santa Fe. Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004)(*en banc*)(internal quotation marks omitted). "[D]e minimis employment actions and 'very temporary' actions are not materially adverse and, thus, not actionable under title VII . . . ." *Howington Quality Restaurant Concepts, LLC*, 298 Fed.Appx. 436, 442 (6th Cir. 2008)(citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000)). On

the other hand, an adverse employment action is actionable if it involves "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Fuller v. Michigan Dept. Of Transp.*, 580 Fed.Appx. 416, 423 (6th Cir. 2014)(quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

### [1] Upper Management's Alleged Retaliation for Reporting Duncan's Offensive Statements

The factual allegations set forth in paragraph II.C.2(a)[2] above at pp. 13-14 also apply to this a claim of retaliation, and they are incorporated herein by reference in that context. The question before the court here is whether the alleged actions taken by CCS upper management in response to plaintiff's reporting Duncan's comments constituted retaliation within the meaning of Title VII.

The amended complaint alleges that CCS upper management assigned additional work to plaintiff to the detriment of her regular work, no other employees were required to help with the additional work, she was not compensated for the extra work, and she was replaced in her original position by another employee. These facts state a plausible claim of retaliation under Title VII. Accordingly, CCS's motion to dismiss this claim should be denied.[4]

### [2] Alleged Retaliation for Reporting Pamela's and Duncan's Loud Conversations, Laughter, and Coughing

The factual allegations set forth in paragraph II.C.2(a)[3] above at pp. 14-15 constitute the basis for this retaliation claim, and are incorporated herein by reference in that context. Plaintiff adds the following two retaliation-related allegations to this claim not addressed previously: 1)

---

[4] Unlike summary judgment, to withstand a motion to dismiss, the complaint "need only provide 'an adequate factual basis' for a discrimination claim in order to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *James v. Hampton*, 592 Fed.Appx. 449, 460 (6th Cir. 2015)(quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012)).

"management retaliated" against plaintiff for reporting Pamela's and Duncan's alleged conduct by "not having Pamela or Duncan wear a mask but suggest[ing] that Plaintiff wear a mask"; 2) "management required [plaintiff] to come to a luncheon for the company President, even after informing [management] of [her own] flu-like symptoms." (Doc. 22, ¶ 35, pp. 8-9)

The question before the court here is whether Pamela and Duncan's alleged conduct, and upper management's alleged actions in response to plaintiff reporting that alleged conduct, amounted to retaliation under Title VII. The short answer is, "They do not." Pamela's and Duncan's alleged conduct did not constitute a "materially adverse" action against plaintiff within the meaning of Title VII. The alleged actions of management in requiring plaintiff to attend a luncheon for the company president, and not requiring Pamela and Duncan to wear a mask while "suggest[ing]" that plaintiff wear one, are not "materially adverse" within the meaning of Title VII. CCS's motion to dismiss should be granted as to this claim because plaintiff fails to establish a *prima facie* case of retaliation under Title VII.

### [3] Alleged Retaliation Stemming from Pamela's Hostility Toward Sarah

The factual allegations set forth in paragraph II.C.2(a)[4] above at pp. 15-16 apply to this claim of retaliation, and are incorporated herein by reference in that context. Plaintiff adds the following retaliation-related allegation to this claim not previously discussed: "[A]lmost a week afterwards . . . [plaintiff] informed [Sarah] that it . . . appear[ed] as retaliatory for Plaintiff to have to make the corrections." (Doc. 22, ¶ 38, p. 10)

The amended complaint fails to allege and show that the actions about which plaintiff complains in this claim constituted a materially adverse employment action within the meaning of Title VII. As previously established above at p. 9, the district court is not required to conjure up unpled facts in the absence of any provided by plaintiff. In any event, given the facts that are

alleged, Sarah's request appears little more than *di minimis* inconvenience which, as noted above at pp. 16-17, is not actionable as retaliation under Title VII. For these reasons, CCS's motion to dismiss should be granted as to this claim because plaintiff has failed to establish a *prima facie* case of retaliation under Title VII.

### [4] Alleged Retaliatory Discharge

The amended complaint alleges that plaintiff met with Kenya and Pamela on May 15, 2017 to discuss plaintiff's complaints regarding "retaliation and hostile work environment," apparently due to "noise disturbances and severe coughing . . . going on . . . for almost four months." (Doc. 22, ¶¶ 39-40, pp. 10-11) Plaintiff avers that Kenya "became verbally combative" toward her, and made the following statements:

> I am not able to directly manage and supervise you all since you don't have a director, nor have I been able to dedicate fully during this vacancy of four months. . . . You are expected to negotiate these deals a[t] the next level of the role. You need to set personal issues aside because other people in the department are affected. I expect you to be adults and not [send] emails flying back and forth. You need to figure a way to make it happen. This 'stuff' is unproductive . . . . petty, babyish, foolish[] . . . .

(Doc. 22, ¶ 40, pp. 10-11)(internal quotations omitted) Plaintiff avers that she was "the only one in the meeting writing" and, as Pamela was giving her take on their problems, Kenya demanded that plaintiff "'stop writing and pay attention to Pamela.'" (Doc. 22, ¶ 40, p. 11) Plaintiff avers that "Kenya never interrupted Pamela . . . [who] . . . was yelling at Plaintiff . . . ." (Doc. 22, ¶ 40, p. 11) Plaintiff asserts that the "meeting was clearly another pretext for retaliation," that she "stood up . . . gathered her belongings . . . [and] said . . . 'I don't feel well and I'm going home to work, this is not right, and this attack is unacceptable, you all are not going to jump on me . . . .'" (Doc. 22, ¶ 40, p. 11) The amended complaint alleges that plaintiff was terminated that same day for "job abandonment/insubordination." (Doc. 22, ¶ 41, pp. 11-12)

Summarily walking out of a meeting called by one's supervisor to discuss one's problems with a co-worker does not constitute protected conduct. Summarily departing one's place of work without permission also does not constitute protected conducted. Because plaintiff's actions at the meeting did not constitute protected conduct, and because plaintiff does not attribute her termination to anything other than her actions at the meeting, a Title VII retaliation claim will not lie. Accordingly, CCS's motion to dismiss plaintiff's retaliatory discharge claim should be granted for failure to establish a *prima facie* case of retaliation under Title VII.

## III. CONCLUSION
## AND
## RECOMMENDATIONS

The undersigned **RECOMMENDS** for the reasons stated above that: 1) CCS's motion to dismiss (Doc. 18) be **DENIED IN PART AND GRANTED IN PART**; 2) CCS's motion to dismiss **BE DENIED WITH RESPECT TO PLAINTIFF'S CLAIMS OF RETALIATION** for reporting a co-worker's offensive statements, discussed above at ¶ II.C.2(b)[1] at p. 17; 3) CCS's motion to dismiss **BE GRANTED WITH RESPECT TO THE REMAINDER OF PLAINTIFF'S CLAIMS** for the reasons explained herein; and 4) CCS's motion to ascertain the status of its motion to dismiss (Doc. 26) be **TERMINATED AS MOOT**.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific obj3:15-1309ections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this the 23rd day of May, 2018.

_/s/ Joe B. Brown_____

Joe B. Brown
United States Magistrate Judge